**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **DONALD J. USSERY, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:24-cv-116 (MTT)** |
| ) | |
| **HOUSTON COUNTY, GEORGIA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## <u>ORDER</u>

Defendants Houston County, Georgia and Sheriff's Deputy Mark Daniel Heberlig

move to dismiss pro se plaintiff Donald J. Ussery, Jr.'s 42 U.S.C. § 1983 claims based

on Eleventh Amendment immunity, qualified immunity, and failure to state a claim.  Doc.

9.  For the following reasons, the defendants' motion (Doc. 9) is **GRANTED**.

### I. BACKGROUND[1]

On April 22, 2022, Ussery was driving in Warner Robins, Georgia when Heberlig,

a Houston County Sheriff's Deputy, pulled him over.  Docs. 1 at 4; 1-13 at 21; 3,

Dashcam at 00:17-2:37.  Ussery and Heberlig pulled into a Shell gas station on Lake

Joy Road.  Docs. 1-13 at 21; 3, Dashcam at 2:36-2:42.  Heberlig approached Ussery's

---

[1] These facts are drawn from Ussery's complaint, and the exhibits attached to and referenced in it, including the bodycam and dashcam footage of the incident.  Docs. 1; 3.  The parties do not dispute that these documents and this footage can be considered on a motion to dismiss.  Docs. 9-1 at 9 n.2; 14 at 4, 6-9, 13; *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276-78 (11th Cir. 2023) (holding that a district court may consider bodycam footage under the incorporation-by-reference doctrine where it is referenced in the complaint, "depicts the events that are central to [the plaintiff]'s claims," and "is undisputed"); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300-1301 (11th Cir. 2024); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  The Court notes that the docket entry for the bodycam and dashcam footage is separate from the docket entry for the complaint.  Docs. 1; 3.  However, it is clear and undisputed that Ussery attached the bodycam and dashcam footage as exhibits to his complaint.  Doc. 3. The Court cites the bodycam and dashcam footage as "Doc. 3, Bodycam" or "Doc. 3, Dashcam," respectively.

vehicle, introduced himself, and asked for Ussery's driver's license.[2]  Doc. 3, Bodycam at 1:33-1:46.  Ussery questioned, "can I ask what I was doing?"  *Id*., Bodycam at 1:47.  Heberlig stated, "I need to see your driver's license first sir and then I'll explain the reason why I stopped you."  *Id*., Bodycam at 1:48-1:50.  Ussery stated, "that's not how it works" and asked again what he did wrong.  *Id*., Bodycam at 1:51-1:57.  Heberlig told Ussery to give him his driver's license, for the third time, and Ussery stated he was not going to give it until Heberlig told him "what [he] did wrong."  *Id*., Bodycam at 1:59-2:00.  Heberlig then told Ussery to step out of his vehicle and put his phone down.  *Id*., Bodycam at 2:00-2:02.  Ussery refused and stated he wanted to stay with his son, who was in the passenger seat.  *Id*., Bodycam at 2:02-2:05.  At that point, Heberlig radioed for another unit.  *Id*., Bodycam at 2:05-2:07.

Heberlig then told Ussery to hand over his driver's license—for the fourth time.  *Id*., Bodycam at 2:17-2:20.  Ussery did not, asking—again—what he did wrong.  *Id*., Bodycam at 2:21-2:27.  Ussery then told Heberlig he had a firearm in his back seat, and asked what he did wrong.  *Id*., Bodycam at 2:29-2:40.  Heberlig told Ussery he needed to see his driver's license, for the fifth time, before he told Ussery why he was stopped.  *Id*., Bodycam at 2:40-2:43.  Ussery replied, "you can get my license once you tell me why you stopped me."  *Id*., Bodycam at 2:43-2:46.  After some more back and forth, Heberlig told Ussery he was stopped because his taillights were not working.  *Id*. at 2:57-3:07.  Ussery told Heberlig he had "just got a warning for that."  *Id*., Bodycam at 3:07-3:15.  Heberlig then told Ussery, for the sixth time, to hand him his driver's license.

---

[2] From the time Heberlig arrived at Ussery's vehicle to the time Ussery stepped out of his vehicle, Ussery filmed the interaction with Heberlig on his cellphone.  Doc. 3, Bodycam at 1:42-4:22.  The cellphone video is not in the record.

*Id*., Bodycam at 3:15.  Ussery finally gave Heberlig his license.  *Id*., Bodycam at 3:35-3:48.

After Ussery handed over his driver's license, Heberlig told Ussery to put his phone down and come out of his vehicle.  *Id*., Bodycam at 3:48-3:51.  At this point, a backup officer had arrived.  *Id*., Bodycam at 3:49-4:12; Dashcam at 4:52-5:17.  Ussery refused Heberlig's orders, questioning why he needed to exit his vehicle, stating he did not want to leave his child, and calling his fiancée.  *Id*., Bodycam at 3:56-4:32.  Heberlig and the backup officer, after more back and forth with Ussery, eventually pulled Ussery from his vehicle, and Heberlig placed handcuffs on Ussery while beside Ussery's vehicle.  *Id*., Bodycam at 4:33-5:00; Dashcam at 5:37-6:05.  The backup officer also took Ussery's phone out of Ussery's hands and tossed it in Ussery's back seat.  *Id*., Bodycam at 4:40-4:44; Dashcam at 5:45-5:47.

While Heberlig walked Ussery to his patrol vehicle, Ussery turned to look at his own vehicle, and Heberlig pushed Ussery onto the hood of the patrol vehicle, yelling "you're gonna stop, you're gonna listen, you understand me?"  *Id*., Bodycam at 5:01-5:13; Dashcam at 6:06-6:29.  Ussery asked, "why are you slamming me to the car?"  *Id*., Bodycam at 5:13-5:14.  Heberlig stated, "because you're not listening and you're snatching away from me."  *Id*., Bodycam at 5:15-5:18.  Heberlig then lifted Ussery up, patted him down, and placed him in the back of his patrol vehicle.  *Id*., Bodycam at 5:28-6:07; Dashcam at 6:29-7:40.  Later, while in the patrol vehicle at the scene, Ussery asked Heberlig if he recognized Ussery from a previous time Heberlig had pulled him over; Heberlig stated he did not.  *Id*., Bodycam at 7:38-8:05.

Heberlig waited for Ussery's fiancée to arrive to pick up Ussery's son and for someone Ussery knew to pick up Ussery's vehicle. *Id.*, Bodycam at 10:17-10:40; Dashcam at 13:59-14:50, 44:52-45:23. At the scene, the officers, without entering his vehicle, looked in Ussery's vehicle using a flashlight and Heberlig moved Ussery's firearm from Ussery's vehicle into the trunk of Ussery's fiancée's vehicle. *Id.*, Bodycam at 32:13-32:51; Dashcam at 14:47-15:13, 33:15-33:28. Once everything at the scene was settled, Heberlig drove Ussery to the jail. *Id.*, Bodycam at 44:20-55:50; Doc. 1-13 at 14. During that drive, Ussery told Heberlig:

> I didn't realize I was pulling from you, it was just my greasy ass arms, when I turned to look at my son, that's what probably did it, and I know in your mind you're like "this guy pulling from me" and it was just my arm slippery as hell … then I realized you was just trying to get me to calm down and I'm like shit, now now I'm pissed at myself cause I'm like dammit I could've just been home. I should've just got out the damn car man …. Right before I passed you, I knew that you was gonna pull me over. I just felt it, I said, "I'm finna get pulled over."

Doc. 3, Bodycam at 54:03-54:13, 54:50-55:00, 55:33-55:40.

On June 13, 2022, in the State Court of Houston County, Ussery was charged on four counts: (1) obstruction of an officer, in violation of O.C.G.A. § 16-10-24(a); (2) improper display of license plates, in violation of O.C.G.A. § 40-2-41; (3) a taillight violation, in violation of O.C.G.A. § 40-8-23; and (4) unlawful use of blue lights, in violation of O.C.G.A. § 40-8-90. Doc. 1-13 at 7-8. Ussery pled guilty to counts one and three and counts two and four were dismissed. *Id.* at 31.

On April 15, 2024, Ussery sued Heberlig based on the traffic stop. Doc. 1. Although some allegations suggest Ussery seeks to hold Houston County responsible for Heberlig's actions, his complaint alleges Heberlig is employed by the Houston County Sheriff. Doc. 1-3. Ussery's remaining claims are brought against "Houston

County, Georgia County Officials."  Doc. 1 at 2.  Although the constitutional bases for

Ussery's claims against Houston County officials are unclear, Ussery alleges his claims

against both defendants are brought pursuant to 42 U.S.C. § 1983.  *Id*. at 3.  He also

alleges a state law intentional infliction of emotional distress ("IIED") claim.  Doc. 1-13 at

22-23, 36.  Both defendants now move to dismiss Ussery's § 1983 claims.  Doc. 9.

## II. STANDARD

### A. Standard Under 12(b)(1)

"[T]he Eleventh Amendment's ultimate guarantee is that nonconsenting states

may not be sued by private individuals in federal court.  Because the Eleventh

Amendment represents a constitutional limitation on the federal judicial power

established in Article III, federal courts lack jurisdiction to entertain claims that are

barred by the Eleventh Amendment."  *McClendon v. Ga. Dep't of Cmty. Health*, 261

F.3d 1252, 1256 (11th Cir. 2001) (internal citations omitted).  When "the existence of

subject matter jurisdiction is inextricably intertwined with material facts affecting the

merits of the claim, a district court must be guided by the standard for summary

judgment motions."  *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996).

Here, the jurisdictional issue is not inextricably intertwined with any material facts, so

the Court analyzes Eleventh Amendment immunity under Rule 12(b)(1).

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of

subject matter jurisdiction by either facial or factual attack."  *Stalley v. Orlando Reg'l

Heathcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A facial attack on the

complaint requires the court merely to look and see if the plaintiff has sufficiently alleged

a basis of subject matter jurisdiction, and the allegations in his complaint are taken as

true for the purposes of the motion." *Id*. at 1232-33 (quoting *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)).  A factual attack, however, "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233.  The attack here is facial.

**B. Standard Under 12(b)(6)**

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair

notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

## III. DISCUSSION

Ussery alleges various 42 U.S.C. § 1983 claims under the First, Fourth, Fifth, and Sixth Amendments, as well as a state law IIED claim, against Heberlig, in his individual and official capacities, and against Houston County.  Docs. 1 at 1, 3-5; 1-13 at 21-36.  Heberlig argues dismissal of Ussery's § 1983 claims is warranted because any constitutional claim brought against him in his official capacity is barred by the Eleventh Amendment and he is entitled to qualified immunity on any constitutional claim brought against him in his individual capacity.  Doc. 9-1 at 3-18.  Houston County argues the § 1983 claims against it must be dismissed because Ussery's complaint fails to contain sufficient allegations to hold Houston County liable.[3]  *Id.* at 19-20.  For the following reasons, the Court agrees with the defendants.

## A. Ussery's Official Capacity § 1983 Claims Against Heberlig are Barred by the Eleventh Amendment

Ussery sued Heberlig in his individual and official capacities.  Doc. 1 at 1. Heberlig argues any § 1983 claim against him in his official capacity is barred by the Eleventh Amendment.  Doc. 9-1 at 3-6.  Heberlig is correct.

The Eleventh Amendment bars federal courts from entertaining suits against a state without the state's consent.  *See Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  The Eleventh Amendment applies not only to the State itself, but also to any

---

[3] The defendants did not address Ussery's IIED claim.  *See generally* Docs. 9-1; 19.

defendant who acts as an "arm of the State." *Id*. But for § 1983 claims, it is not just the Eleventh Amendment that bars official capacity claims for damages. States—and, by extension, arms of the state—are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And § 1983 subjects only "persons" to monetary liability for violations of constitutional rights. Ussery's complaint establishes that Heberlig is employed by the Houston County Sheriff,[4] and it is well and long settled that a Georgia sheriff and his deputies act as arms of the state when performing general law enforcement functions. Doc. 1 at 2; *Manders v. Lee*, 338 F.3d 1304 (2003); *Pellitteri v. Prine*, 776 F.3d 777 (11th Cir. 2015); *Scruggs v. Lee*, 256 F. App'x 229, 231-32 (11th Cir. 2007); *Pequeno v. Seminole Cnty.*, Ga., 623 F. Supp. 3d 1337, 1347 (M.D. Ga. 2022) (collecting cases); *Hudson v. Morris*, 2021 WL 2188571, at *6 (S.D. Ga. May 28, 2021); *Townsend v. Coffee Cnty., Ga.*, 854 F. Supp. 2d 1345, 1352 (S.D. Ga. 2011). Accordingly, Ussery's official capacity § 1983 claims against Heberlig in his official capacity are barred by the Eleventh Amendment and Heberlig's motion as to this issue (Doc. 9-1 at 3-6) is **GRANTED**.

## B. Heberlig is Entitled to Qualified Immunity on Ussery's § 1983 Individual Capacity Claims

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Although qualified immunity provides

---

[4] Ussery alleges that Heberlig is a sheriff's deputy although he sometimes confuses Houston County with the Houston County Sheriff's Office. Exhibit 3 to his complaint establishes the obvious—Heberlig is a deputy of the Houston County Sheriff. Doc. 1-3.

government officials with a formidable shield, their entitlement to raise that shield is not automatic … the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). Because Ussery could not reasonably argue that Heberlig was acting outside the scope of his discretionary authority, Heberlig is entitled to raise the shield of qualified immunity.

To overcome a qualified immunity defense, Ussery must allege that (1) the facts, viewed in his favor, establish a constitutional violation; and (2) Heberlig violated clearly established law at the time of the alleged violation. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). This two-step analysis may be done in whatever order is deemed most appropriate for the case. *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

*1. First Amendment*[5]

Ussery alleges two First Amendment claims—retaliation and freedom of expression. Doc. 1-13 at 24.

a. First Amendment retaliation

Although hard to decipher, it appears Ussery's First Amendment retaliation claim is based on his allegation that Heberlig "add[ed] more charges" against him after Ussery "identified [Heberlig] from a previous encounter." Docs. 1 at 10; 1-13 at 24. Heberlig

---

[5] "The First Amendment applies to the states through incorporation by the Due Process Clause of the Fourteenth Amendment." *Turner v. Williams*, 65 F.4th 564, 579 (11th Cir. 2023).

argues Ussery's complaint fails to allege a First Amendment retaliation claim because there was probable cause to arrest and charge Ussery.[6] Doc. 9-1 at 7-11. The Court agrees with Heberlig.

"To state a § 1983 First Amendment retaliation claim, a plaintiff generally must [allege]: (1) [he] engaged in constitutionally protected speech,[7] such as [his] right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). "In § 1983 First Amendment retaliation cases, the Supreme Court has recognized that retaliatory animus by a governmental actor is a subjective condition that is 'easy to allege and hard to disprove.'" *Id*. (quoting *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019)). "For this reason, courts have identified two general approaches to retaliation claims against governmental actors, with the particular approach chosen dependent on the type of alleged retaliation at issue." *Id*. "One approach [is] typically

---

[6] Heberlig also argues Ussery's First Amendment retaliation claim, as well his unlawful stop, malicious prosecution, and false arrest claims, are barred by *Heck v. Humphrey*. Doc. 9-1 at 8-9, 16 (citing 512 U.S. 477 (1994)). In *Heck*, the Supreme Court held "that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486. However, there is a circuit split as to "whether Heck applies to [a plaintiff] that … is no longer in custody on his criminal convictions," and the Eleventh Circuit has yet to decide the issue. *Hall v. Merola*, 67 F.4th 1282, 1293 (11th Cir. 2023); *Topa v. Melendez*, 739 F. App'x 516, 519 n.2 (11th Cir. 2018) (collecting cases). Because Ussery alleges his probation ended May 2024, and because his First Amendment retaliation, unlawful stop, malicious prosecution, and false arrest claims fail for other reasons, the Court declines to address whether *Heck* applies here. Doc. 1-13 at 35.

[7] It is unclear whether Ussery's comments to Heberlig qualify as protected speech. Because Heberlig does not address this issue, neither does the Court.

used when a governmental employee claims that he was fired because he engaged in First Amendment activity." *Id*. "The second approach—taken when the governmental defendant has utilized the legal system to arrest or prosecute the plaintiff—has been to require the plaintiff to plead and prove an absence of probable cause as to the challenged retaliatory arrest or prosecution in order to establish the causation link between the defendant's retaliatory animus and the plaintiff's injury." *Id*. The second approach is applicable here.

"To determine whether an officer had probable cause for an arrest, '[courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Dist. of Colum. v. Wesby*, 538 U.S. 48, 56-57 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "Probable cause exists if the totality of the circumstances known to the officers could persuade a reasonable officer that there is a 'substantial chance of criminal activity' by the person who is arrested." *Davis v. City of Apopka*, 78 F.4th 1326, 1334 (11th Cir. 2023) (quoting *Wesby*, 538 U.S. at 57). "A substantial chance is all that is required, 'not an actual showing of such activity.'" *Id*.

The bodycam and dashcam footage demonstrate, as a matter of undisputed fact, that there was probable cause to arrest and charge Ussery. Ussery was charged with obstruction of an officer, in violation of O.C.G.A. § 16-10-24(a); improper display of license plates, in violation of O.C.G.A. § 40-2-41; a taillight violation, in violation of O.C.G.A. § 40-8-23; and unlawful use of blue lights, in violation of O.C.G.A. § 40-8-90. Doc. 1-13 at 7-8. Ussery pled guilty to the obstruction and taillight charges. *Id*. at 34.

O.C.G.A. § 16-10-24(a) provides: "[A] person who knowingly and willfully obstructs or hinders any law enforcement officer … in the lawful discharge of his or her official duties shall be guilty of a misdemeanor."  Ussery's obstruction charge is based on his "refus[al] to obey [Heberlig's] lawful commands, to wit: did refuse to exit his vehicle after being asked to do so."  Doc. 1-13 at 7.  As shown by the bodycam footage, Heberlig and the backup officer repeatedly instructed Ussery to exit his vehicle and Ussery repeatedly refused.  Doc. 3, Bodycam at 2:00-2:02, 3:48-3:51, 3:57-4:00, 4:16-4:33.

Next, O.C.G.A. § 40-8-23 provides that every vehicle must have two taillights, those taillights must be "wired as to be lighted whenever the headlights or auxiliary driving lights are lighted," and the "lenses on taillights shall be maintained in good repair."  The dashcam footage clearly shows that the taillights on Ussery's vehicle were either not working or not turned on.  Doc. 3, Dashcam at 00:17-2:37.  And Ussery told Heberlig that he had an issue with his taillights, he had previously received a warning for his taillights, and he knew Heberlig was going to pull him over.  *Id*., Bodycam at 3:07-3:15, 55:33-55:40.

Ussery's improper display of license plates charge was based on Ussery "cover[ing] the license plate of [his] vehicle with an apparatus that obstructed the clear display and legibility of said license plate."  Doc. 1-13 at 7; O.C.G.A. § 40-2-41 ("No apparatus that obstructs or hinders the clear display and legibility of a license plate shall be attached to the rear of any motor vehicle.").  As shown in the bodycam and dashcam footage, Ussery's license plate was covered by some sort of material that made his license plate illegible.  Doc. 3, Bodycam at 25:14-25:22; Dashcam at 1:50.

Finally, Ussery was charged with violating O.C.G.A. § 40-8-90 because his vehicle "was equipped with a device capable of producing stationary blue lights."  Doc. 1-13 at 8; O.C.G.A. § 40-8-90(a)(1) ("[I]t shall be unlawful for any person … to operate any motor vehicle equipped with or containing a device capable of producing any blue lights, whether flashing, blinking, revolving, or stationary.").  The bodycam and dashcam footage show that Ussery's vehicle contained green and blue "underglow" lights.  Doc. 3, Bodycam at 24:41-24:49, 27:30-27:34, 37:27-37:29; Dashcam at 00:17-00:18.

In sum, the bodycam and dashcam footage clearly show violations of each of Ussery's charges.  Accordingly, the circumstances known to Heberlig—including Ussery's admissions that he "should've just got out the" car, that he realized he had pulled from Heberlig, and that he knew Heberlig would pull him over for his taillight— would have persuaded any reasonable officer that Ussery committed any one of these four crimes; Heberlig thus had probable cause to arrest and charge Ussery; and Ussery has failed to sufficiently allege a First Amendment retaliation violation against Heberlig.  Doc. 3, Bodycam at 54:03-54:13, 54:50-55:00, 55:33-55:40.

b. First Amendment right to record police conduct

Ussery alleges Heberlig interfered with his First Amendment rights when he stopped Ussery from recording a video of the traffic stop on his phone.  Doc. 1-13 at 22-24.  The First Amendment protects an individual's "right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct."  *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).  This claim fails for two reasons.

First, although Heberlig instructed Ussery to put his phone down, it was the backup officer who took Ussery's phone and tossed it in Ussery's back seat.  Doc. 3, Bodycam at 2:00-2:02, 3:48-3:51, 3:58-4:00, 4:40-4:44; Dashcam at 5:45-5:47.  Second, the backup officer tossed Ussery's phone because Heberlig was ordering Ussery to get out of the vehicle, Ussery was not complying, and finally Heberlig needed to place Ussery in handcuffs.  *Id*., Bodycam at 4:35-4:57.  The Court can find no caselaw, controlling or persuasive, holding that the First Amendment right to record police extends to a non-compliant *arrestee* holding a phone during his arrest.[8]  *See Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1129 n.8 (11th Cir. 2021) (noting that the plaintiff "was not violating any law … while she was filming").  For these reasons, Ussery has failed to sufficiently allege a First Amendment violation against Heberlig based on the tossing of his phone.

   *2. Fourth Amendment*[9]

   Ussery alleges five Fourth Amendment claims—unlawful stop, unreasonable search, excessive force, false arrest, and malicious prosecution.  Doc. 1-13 at 23-24, 33.

      a. Unlawful stop

   The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

---

[8] In the Eleventh Circuit, the right to record police during an arrest has only been considered in the context of a bystander.  *See Smith*, 212 F.3d at 1332; *Toole v. City of Atlanta*, 789 F. App'x 381, 383 (11th Cir. 2019); *Crocker v. Beatty*, 995 F.3d 1232, 1238 (11th Cir. 2021); *Khoury*, 4 F.4th at 1122; *Dunn v. City of Fort Valley*, 464 F. Supp. 3d 1347, 1354 (M.D. Ga. 2020).

[9] The Fourth Amendment was "made applicable to the states by the Fourteenth Amendment."  *Major League Baseball v. Crist*, 331 F.3d 1177, 1179 n.4 (11th Cir. 2003) (citing *Mapp v. Ohio*, 367 U.S. 643 (1961)).

U.S. Const. amend. IV.  "Traffic stops qualify as seizures under the Fourth Amendment." *United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir. 2007).  "[T]o comply with the Fourth Amendment, an officer must have reasonable suspicion."  *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022).  "In other words, an officer making a [traffic] stop must have 'a particularized and objective basis for suspecting the person stopped of criminal activity.'"  *Id.* (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)).  "Even minor traffic violations qualify as criminal activity."  *Id*. at 880.  Although Heberlig does not directly address reasonable suspicion, he argues Ussery "does not have a viable Fourth Amendment claim arising out of his arrest" because probable cause existed.  Doc. 9-1 at 14-16.  This is true.

Because reasonable suspicion "requires [a level of suspicion] 'obviously less' than is necessary for probable cause," and because the Court previously determined Heberlig had probable cause to suspect Ussery of the taillight, license plate, and blue light violations before pulling him over, it necessarily follows that Ussery has failed to sufficiently allege that Heberlig conducted an unlawful stop in violation of the Fourth Amendment.[10]  *Navarette*, 572 U.S. at 397 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *Bradley v. Benton*, 10 F.4th 1232, 1239 (11th Cir. 2021); *United States v. Braddy*, 11 F.4th 1298, 1310 (11th Cir. 2021).

b. Unreasonable search

Ussery's allegation of an unreasonable search is based on Heberlig "[l]ooking inside … Ussery's car while he [was] in the back of the police car."  Doc. 1-13 at 24, 26. Heberlig argues Ussery has failed to allege a claim for an unreasonable search under

---

[10] It is worth noting, again, that Ussery admitted to Heberlig that he knew his taillights were not working and knew he might be pulled over.  Doc. 3, Bodycam at 3:07-3:15, 55:33-55:40.

the Fourth Amendment because (1) the search was permitted under the plain view doctrine, and (2) Heberlig did not seize anything from Ussery's vehicle.  Doc. 9-1 at 11-12.  The Court agrees.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted).  One of these exceptions is relevant here: the plain view doctrine.  "Under the plain view doctrine, the warrantless seizure of an item is permissible where '(1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent.'"  *United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014) (quoting *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006)).  Moreover, "[i]t is well established that officers conducting a traffic stop may 'take such steps as [are] reasonably necessary to protect their personal safety.'"  *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)) (alterations in original).  Thus, during a traffic stop, an "officer may seize any contraband, including weapons, in plain view."  *Purcell*, 236 F.3d at 1277.  The officer may also "use a flash light to illuminate a vehicle's dark interior."  *Id.*

Here, Ussery was pulled over during a lawful traffic stop, he told Heberlig he had a firearm in his vehicle "in the open view," he told Heberlig where it was, and, while Ussery was in the back of the patrol vehicle, Heberlig and the backup officer used their flashlights to locate the firearm to put it in Ussery's fiancée's vehicle.  Doc. 3, Bodycam

at 2:29-2:31, 10:38-10:40, 13:42-52, 32:13-32:50.  Clearly, Heberlig's actions were conducted in accordance with the previously discussed principles and did not violate the Fourth Amendment's protection against unreasonable searches and seizures.

         c. Excessive force

Ussery alleges Heberlig used excessive force in violation of the Fourth Amendment when he "slamm[ed] [Ussery] onto the hood of the police car resulting in" bruises on "his wrist, shoulder, chest, knees" and foot.  Doc. 1-13 at 23, 27.  The Court agrees with Heberlig that Ussery has failed to allege an excessive force violation because "a *de minimus* use of force will not support such a claim."  Doc. 9-1 at 18.

"The Fourth Amendment protects against excessive force in the arrest context." *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021) (citing *Graham*, 490 U.S. at 396).  "An officer's use of force … violates the Fourth Amendment when it is *objectively unreasonable* under the facts and circumstances of a specific case, 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (emphasis in original) (quoting *Graham*, 490 U.S. at 396).  But "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Graham*, 490 U.S. at 396 (citation omitted).  During an arrest, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."  *Baxter v. Roberts*, 54 F.4th 1241, 1269 (11th Cir. 2022) (quoting *Nolin*, 207 F.3d at 1257).

At the time Heberlig pushed Ussery on the hood, Ussery had repeatedly failed to follow Heberlig's orders.  The Eleventh Circuit has held that "the crime at issue" is

relevant to the de minimus force analysis.  *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  In doing so, the Eleventh Circuit distinguished between crimes like "disorderly conduct by yelling at police officers," where a higher degree of force is more reasonable, with "less significant" crimes, like the improper use of a horn, where a higher degree of force is less reasonable.  *Id*. at 1199; *see Patel v. City of Madison, Ala.*, 959 F.3d 1330, 1340 (11th Cir. 2020) ("Proportionality is preeminent in the excessive-force context.").  Obstruction of a police officer by repeatedly refusing orders and being difficult is analogous to disorderly conduct.

*Nolin* is instructive.  There, an officer intervened in a fight between the plaintiff and another individual.  207 F.3d at 1254.  The plaintiff alleged the officer used excessive force when the officer

> grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him.  [The plaintiff] maintain[ed] he suffered bruising to his forehead, chest, and wrists, although he admits the bruises disappeared quickly and he did not seek medical treatment.

*Id.* at 1255.  The Eleventh Circuit held that the officer's use of force was de minimus.  *Id.* at 1258.  Here, the bodycam and dashcam footage show that Heberlig used considerably less force than that used in *Nolin*: Heberlig pushed Ussery down on the hood of his vehicle for less than twenty seconds.  Doc. 3, Bodycam at 5:10-5:26; Dashcam at 6:14-6:30.  Heberlig did not throw Ussery four feet, he did not knee him, and he did not push his head.  And, like the plaintiff in *Nolin*, the worst physical injury alleged by Ussery is a bruise.

Finally, the Eleventh Circuit in *Lee* also distinguished between a use of force during an arrest and a use of force "after the arrest [has] been fully effected, the arrestee completely secured, and all danger vitiated." 284 F.3d at 1199-1200. At the time Heberlig used force, although Ussery was handcuffed, Heberlig was still walking Ussery to the patrol vehicle and Ussery was turning towards Heberlig. Doc. 3, Bodycam at 54:03-54:13 (Ussery admitting he pulled away from Heberlig), Dashcam at 6:07-6:14. Thus, Ussery was not "completely secured," nor was any potential danger "vitiated."

Accordingly, the Court concludes that the bodycam and dashcam footage show that Heberlig's use of force was de minimus and therefore Ussery has failed to sufficiently allege a Fourth Amendment excessive force claim.

### d. False arrest

Heberlig argues Ussery fails to sufficiently allege a false arrest violation because Heberlig had probable cause to arrest Ussery. Doc. 9-1 at 16. The Court agrees.

The existence of probable cause bars a § 1983 false arrest claim. "'Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures" … [and] an arrest is a seizure of the person.'" *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (quoting *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007)). While "'[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim[,]' … '[t]he existence of probable cause at the time of arrest ... constitutes an absolute bar'" to any such claim. *Id.* at 1326-27 (quoting *Kingsland v. City. of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004)) (alterations in original); *Davis v. City of Apopka*, 78 F.4th 1326, 1333 (11th Cir.

2023).  In other words, if Heberlig had probable cause, Ussery's false arrest claim must fail.  And, as discussed, the bodycam and dashcam footage confirm that Heberlig had probable cause.  Accordingly, Ussery has failed to state a Fourth Amendment false arrest claim.[11]

e. Malicious prosecution

Heberlig argues Ussery's malicious prosecution claim fails because his arrest was warrantless and thus not based on legal process.  Doc. 9-1 at 14-15.  For that reason and another, the Court agrees.

First, the facts Ussery alleges under the malicious prosecution section of his complaint only address the actions of his public defender.  Doc. 1-13 at 33-36.

Second, a malicious prosecution claim "requires a seizure 'pursuant to legal process.'"  *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)); *Butler v. Smith*, 85 F.4th 1102, 1113 (11th Cir. 2023); *Martin v. Miami Dade Cnty.*, 2024 WL 1434329, at *6 (11th Cir. 2024).  A warrantless arrest, like the arrest here, is a "seizure[] without legal process," and the proper way to challenge a warrantless arrest is through a false arrest claim.  *Aguirre*, 965 F.3d at 1158; *Martin*, 2024 WL 1434329, at *6; *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (citation omitted) ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution

---

[11] Even if Heberlig lacked probable cause, he would still be entitled to qualified immunity because he at least had "arguable probable cause" to arrest Ussery.  Arguable probable cause requires only that "under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present."  *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).  In other words, even if Ussery had met his burden on the first prong of the qualified immunity analysis, he would fail under the second "clearly established" prong.  *Waits v. Spencer*, 2023 WL 350392, at *3 (M.D. Ga. Jan. 20, 2023).

claim and on the wrongful use of judicial process rather than detention itself."); *Harris v. Hixon*, 102 F.4th 1120, 1137-38 (11th Cir. 2024) (Tjoflat, J., concurring); *Land v. Sheriff of Jackson Cnty., Fla.*, 85 F.4th 1121, 1126-27 (11th Cir. 2024).  While a seizure pursuant to legal process includes "seizures following an arraignment, indictment, or probable-cause hearing," Ussery alleges no facts regarding the existence of any of these proceedings.  *Aguirre*, 965 F.3d at 1158.

Accordingly, Ussery has failed to sufficiently allege a Fourth Amendment malicious prosecution violation against Heberlig.

### 3. Fifth Amendment[12]

Heberlig argues Ussery's Fifth Amendment claim is not cognizable under § 1983. Docs. 9-1 at 6; 19 at 9.  The Court agrees.

Ussery alleges Heberlig violated his Fifth Amendment rights because "Heberlig did not read … Ussery *Miranda* Rights therefore he had no right against self-incrimination, they did not permit him to have an attorney present while attempting to make him step out the car to have a conversation without his phone."  Doc. 1-13 at 24. However, the Supreme Court has held that a "violation of the *Miranda* rules" does not "provide[] a basis for a claim under § 1983."  *Vega v. Tekoh*, 597 U.S. 134, 141 (2022). Accordingly, Ussery has also failed to sufficiently allege a Fifth Amendment violation against Heberlig.

---

[12] The Fifth Amendment's protection against self-incrimination has been incorporated and applied to the states through the Fourteenth Amendment.  *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010).

*4. Sixth Amendment*[13]

Ussery's Sixth Amendment claim simply states: "No fair right to a lawyer." Doc. 1-13 at 240-25. The Court agrees with Heberlig that Ussery has failed to allege a Sixth Amendment violation because (1) Ussery alleges that he "was represented by counsel in the Criminal case," and (2) "even if [he] was not adequately represented, there is no allegation that … Heberlig was responsible for providing [Ussery] with an attorney." Docs. 1-13 at 30-34; 9-1 at 13.

*5. Eighth Amendment*

Heberlig moves to dismiss Ussery's claims under the Eighth Amendment for "excessive bail, excessive fines imposed, and cruel punishment." *Id*. at 25; Doc. 9-1 at 13-14. As Heberlig argues, Ussery has not alleged how Heberlig is responsible for the fine imposed. Moreover, the Eighth Amendment's prohibition on cruel and unusual punishment does not apply to arrestees like Ussery. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). Accordingly, Ussery has failed to allege an Eighth Amendment violation.

*6. No violation of a "clearly established" right*

Because Heberlig did not violate Ussery's constitutional rights, it is not necessary for the Court to consider the "clearly established" prong of the qualified immunity analysis. *Melton v. Abston*, 841 F.3d 1207, 1223, 1225 (11th Cir. 2016) ("Because [the defendant] did not violate [the plaintiff]'s constitutional rights, we need not reach the second prong of the qualified immunity inquiry."). But it is helpful. Ussery does not

---

[13] Reasonably read, to the extent Ussery's complaint can be read in that manner, it is doubtful that Ussery intended to assert Sixth and Eighth Amendment claims against Heberlig, but Heberlig nonetheless moves on those claims and the Court addresses them.

address the "clearly established" prong. *See generally* Doc. 14. Thus, Ussery does

not—and cannot—point to any Eleventh Circuit, Georgia Supreme Court, or United

States Supreme Court case to support his arguments that Heberlig violated clearly

established law.[14]

## C. Ussery's § 1983 Claims Against Houston County Fail

"The Supreme Court has placed strict limitations on municipal liability under §

1983." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "A county's

liability under § 1983 may not be based on the doctrine of respondeat superior." *Id*.;

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, only when Houston

County's policy or custom causes a constitutional violation may a county be held

responsible. *Grech*, 335 F.3d at 1329; *Monell*, 436 U.S. at 694. Specifically, "to impose

§ 1983 liability on a municipality, a plaintiff must [allege]: (1) that his constitutional rights

were violated; (2) that the municipality had a custom or policy that constituted deliberate

indifference to that constitutional right; and (3) that the policy or custom caused the

violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *Grech*, 335 F.3d

at 1329-30.

As explained previously, Heberlig is not an employee of Houston County, so

Heberlig's actions are not relevant to the Court's analysis as to Houston County. And

even if Heberlig was relevant here, Ussery has failed to allege a constitutional violation

---

[14] A right becomes "clearly established" in three ways. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). First, Ussery can show that a materially similar case has already been decided, consisting of binding precedent by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court. *Id*. Second, Ussery can show that a broader clearly established principle should control the novel facts of the particular case—that is, the unconstitutionality of the instant conduct must be apparent by looking to the guiding principles of the previous case, irrespective of the underlying factual situation. *Id*. Third, Ussery can show that the conduct is so egregiously unconstitutional that prior case law is unnecessary. *Id*.

against him.  In any event, Ussery has not sufficiently alleged a constitutional violation against *anyone* employed by Houston County.  Even if Ussery had done so, "[a] single incident of a constitutional violation is insufficient to [allege] a policy or custom" necessary to state a claim for municipal liability.  *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 957 (11th Cir. 2019) (quoting *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1312 (11th Cir. 2011)).  Further, Ussery has failed to allege that Houston County had a policy or custom that caused a deprivation of his rights.  Accordingly, Ussery has failed to state a § 1983 claim against Houston County.[15]

### D. The Court Declines to Exercise Supplemental Jurisdiction Over Ussery's State Law Claim

The defendants did not move to dismiss Ussery's IIED claim.  *See generally* Doc. 9-1.  In any event, the Court declines to exercise supplemental jurisdiction over that claim.  Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction as to those claims over which it has supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction.  *Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005); *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 745 (11th Cir. 2006).  In exercising its discretion, the court should consider comity, judicial economy, convenience, and fairness to the parties.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (finding that the test as outlined in *Gibbs* should be used in

---

[15] All Ussery's claims against Houston County officials challenge court proceedings, which raises various issues, including judicial immunity, whether these individuals were Houston County employees, and prosecutorial immunity—all bases for dismissal.  Ussery's claims against Houston County officials likely sound in habeas corpus, an issue not before this Court.  In the end, Ussery can point to no basis to establish a constitutional violation against either defendant.  Thus, in the alternative, the defendants' motion to dismiss on shotgun pleading grounds (Doc. 9-1 at 2 n.1) is **GRANTED**.  *See Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021).

accordance with § 1367).  The Eleventh Circuit has recognized "that when all federal claims are eliminated before trial, the *Gibbs* factors will ordinarily point toward dismissing the state claims as well."  *Edwards v. Okaloosa Cnty.*, 5 F.3d 1431, 1433 (11th Cir. 1993) (citing *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Because the Court is dismissing Ussery's § 1983 claims—the claims over which it has original jurisdiction—the Court declines to exercise supplemental jurisdiction over Ussery's state law IIED claim.  Accordingly, this claim is **DISMISSED without prejudice**.

## IV. CONCLUSION

For the above reasons, the defendants' motion to dismiss (Doc. 9) is **GRANTED**. Ussery's § 1983 claims are **DISMISSED**.  The Court declines to exercise supplemental jurisdiction over Ussery's IIED claim.[16]

**SO ORDERED**, this 4th day of October, 2024.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[16] Ussery's motion to continue (Doc. 15) and motion for jury trial (Doc. 20) are **TERMINATED as moot**.